IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH GAUTHIER, § | | |
| Individually and on Behalf of § | | |
| All Others Similarly Situated, § | | |
| § | | |
| Plaintiffs, § | | CIVIL ACTION NO. |
| § | | |
| v. § | | 6:13-cv-00046 |
| § | | |
| TRICAN WELL SERVICE, L.P., § | | |
| § | | |
| Defendants. § | | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S REVISED
MOTION FOR CONDITIONAL CERTIFICATION,
FOR DISCLOSURE OF CONTACT INFORMATION, AND TO SEND NOTICE**

Defendant Trican Well Service, L.P. ("Trican") files this Response in Opposition to Plaintiff's Revised Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notice ("Motion") and respectfully shows as follows:

**I.  INTRODUCTION**

The Court should deny certification because Plaintiff Joseph Gauthier's claim under the Fair Labor Standards Act ("FLSA") is too individualized for a collective action and he has failed to show that other individuals want to participate in the lawsuit. Plaintiff, who worked as a field engineer for less than a year, alleges that Trican misclassified him as an exempt employee and failed to pay overtime wages. The analysis required to evaluate whether Plaintiff was properly classified as an exempt employee is unique to him.

Conditional certification is inappropriate because field engineers – many of whom earn more than $100,000 in annual compensation – were not the victims of a single decision, policy, or plan that violated the FLSA. The type of claim alleged by Plaintiff (*i.e.* that he was misclassified as exempt) requires an individualized, highly fact-specific analysis of daily job

responsibilities. Such claims must be determined on a case-by-case basis. Given the need for an individualized inquiry into each individual plaintiff's employment circumstances, a collective action would not provide an efficient mechanism for adjudicating claims in the present action. For these reasons, the Court should deny Plaintiff's Motion in its entirety.

## II. RESPONSE EVIDENCE

Trican relies on the following evidence contained in its Appendix ("App."):

Exhibit A:    Declaration of Chris Schmidt

Exhibit B:    Declaration of Kevin Bagley

Exhibit C:    Declaration of Justin West

Exhibit D:    Declaration of Yvette Garza

## III. STATEMENT OF FACTS

### A. Background on Trican

Trican is a pressure pumping company with operations in many states and with its company headquarters in Houston, Texas. App. 3 (Schmidt, p. 1, ¶ 2). Trican provides innovative, engineered and integrated solutions to its customers involved in the exploration and development of oil and natural gas reserves. *Id.* Trican operates at least eight districts that work directly with hydraulic fracing companies to penetrate and extract gas from, among others plays, the Permian Basin and the Barnett Shale. *Id.*

### B. Duties of Field Engineers

Field engineers are responsible for running on-site operations from a data van and/or trailer, which is generally a 24-foot or a 40-foot trailer equipped with computers, monitors, and software that field engineers use to analyze up to a dozen chemicals and sand concentration levels to track progress and make adjustments so that the fracing project is successfully completed. App. 3, 6 (Schmidt, p. 1-3, ¶¶ 7, 13); App. 7 (Bagley, p. 1, ¶ 4); App. 9 (West, p. 1,

¶ 4). Monitoring chemicals requires specialized knowledge to ensure crew safety and project success. App. 4 (Schmidt, p. 2, ¶ 7). On a typical project, field engineers are charged with ensuring quality control and assurance for over 1,000,000 gallons of fluids with a value of up to $250,000. App. 4 (Schmidt, p. 2, ¶ 9).

Field engineers are also responsible for supervising the fluid technicians on the job site. App. 5 (Schmidt, p. 3, ¶ 11); App. 8 (Bagley, p. 2, ¶ 7); App. 10 (West, p. 2, ¶7) Generally, a job site will include 12 to 24 operators, 1 to 2 field engineers, 1 to 2 fluid technicians, and a treator (on-site supervisor). App. 5 (Schmidt, p. 3, ¶ 11); App. 8 (Bagley, p. 2, ¶ 7); App. 10 (West, p. 2, ¶ 7). Field engineers are also in constant communication with the operators by radio. App. 4 (Schmidt, p. 2, ¶ 8).

Field engineers interact with the customer engineer, who is in the data van with the field engineer, on a daily basis. App. 4 (Schmidt, p. 2, ¶ 8); App. 7, 8 (Bagley, p. 1-2, ¶ 6); App. 9, 10 (West, p. 1-2, ¶ 6). Field engineers use independent discretion and judgment to recommend changes to the customer on a project without approval from anyone at Trican. *Id.* Field engineers also have full authority to change the chemical levels and sand concentrations being pumped into the well to ensure the project is completed successfully. *Id.* Field engineers have full authority to stop a project any time it is determined that the chemical levels or sand concentrations present a potential project failure. Experienced field engineers design projects using independent discretion and judgment. App. 6 (Schmidt, p. 4, ¶ 13).

If a field engineer fails to properly monitor and adjust chemicals, the well casing or piping can be destroyed. App. 4, 5 (Schmidt, p. 2-3, ¶ 10). On a typical project, destruction of the well casing can result in over $100,000.00 in losses. *Id*. A field engineer's failure to properly monitor and adjust sand concentrations also can result in the gas not having a path to

the surface. *Id*. The cost of an unsuccessful project can be up to $2,000,000.00. App. 5 (Schmidt, p. 3, ¶ 10).

**C.     Compensation of Field Engineers**

Field engineers are paid bi-weekly salaries of at least $2,100.00. App. 11 (Garza, p. 1, ¶ 3); App. 3 (Schmidt, p. 1, ¶ 5). Some field engineers earn bi-weekly salaries of over $3,000.00. App. 11 (Garza, p. 1, ¶ 3). In addition to the salaries, field engineers are eligible for bonuses. *Id*. Field engineers in some district are required to have a degree in the field of engineering. App. 3 (Schmidt, p. 1, ¶ 4).

In 2011, of the four field engineers who worked the entire twelve-month period, Trican paid at least two field engineers total compensation exceeding $100,000.00. App. 11 (Garza, p. 1, ¶ 4). In 2012, of the eighteen field engineers who worked the entire twelve-month period, Trican paid at least seven field engineers total compensation exceeding $100,000.00. App. 11 (Garza, p. 1, ¶ 5).

In 2012, Trican employed Joseph Gauthier from May 20, 2011 to January 6, 2012. Trican paid Joseph Gauthier a total of $58,082.76 in 2011. In other words, Gauthier averaged $1,815.08 per week in 2011 ($58,082.76 ÷ by 32 weeks). On an annualized basis, Gauthier earned $94,384.16 in 2011 ($1,815.08 x 52 weeks). Trican paid Gauthier a total of $4,834.33 in 2012. App. 11 (Garza, p. 1, ¶ 6).

## IV.     ARGUMENTS AND AUTHORITIES

Courts have the authority to conditionally certify a class and permit notice to the proposed class under § 216(b) of the FLSA. *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989). But a court's authority to conditionally certify a class and issue notice should be exercised only with discretion and only in appropriate cases. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). The central purpose of a collective action is to allow the efficient

resolution of common issues of law and fact arising from an alleged common and unlawful policy. Conditional certification is not appropriate when individual issues predominate over collective issues. Courts also have cautioned that this discretion to conditionally certify a class should be exercised in such a way as to avoid "stirring up unwarranted litigation." *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 401 (E.D. Tex. 1999).

A.  **Plaintiff has the burden to demonstrate that conditional certification is appropriate.**

Section 216(b) of the FLSA authorizes "any one or more employees" to maintain a suit "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA, however, also provides: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id*. Congress enacted the written consent requirement "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." *Hoffman-La Roche*, 493 U.S. at 173 (citing 93 Cong. Rec. 538, 2182).

Although the FLSA does not expressly provide for conditional certification or the distribution of judicially approved notice to putative plaintiffs, the United States Supreme Court has recognized that district courts "have discretion, in appropriate cases, to implement" the FLSA's collective action mechanism "by facilitating notice to potential plaintiffs." *Hoffman-La Roche Inc.*, 493 U.S. at 167. Courts should allow collective actions only when adjudication of "common issues of law and fact arising from the same alleged … activity" promotes efficiency and judicial economy. *Id*. at 170. Accordingly, "notice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transp. Servs., Inc.*, 2006 WL 1994586, 2 (N.D. Tex. 2006). As another district court in Texas has noted, "[t]he relevant inquiry is not whether the court has

discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion." *Hall v. Burk*, 2002 WL 413901, *2 (N.D. Tex. 2002).

The analysis of whether a plaintiff is "similarly situated" to other individuals follow a two-step process set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *see also Mooney v. Aramco Servs. Co.*, 54 F.3d 1207 (5th Cir. 1995). The first step is called the "notice stage." *Mooney*, 54 F.3d at 1213. At the initial notice stage, plaintiffs must provide the court with some evidence showing that the defendants subjected a group of similarly-situated potential class members to a "single decision, policy or plan" violating the provisions of the FLSA. *Id.* at 1214 n.8. "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Simmons v. T-Mobile USA, Inc.,* No. 06-1820, 2007 WL 210008, at *4 (S.D. Tex. Jan. 24, 2007).

Although the first stage of the *Lusardi* test is modest, conditional certification is not automatic. Even in cases where the parties have conducted little discovery and the court has minimal evidence before it, courts still require some evidence of a common and unlawful policy beyond conclusory assertions in pleadings, affidavits, or declarations. *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 U.S. Dist. Lexis 93035, at *9-10 (S.D. Tex. Nov. 17, 2008); *Treme v. HKA Enters., Inc.*, 2008 WL 941777 (W.D. La. Apr. 7, 2008) ("[U]ncorroborated assertions, without more, do not fulfill the plaintiff's burden under *Lusardi*.").

Allegations that employees were misclassified as exempt alone do not satisfy a plaintiff's burden of showing a company-wide policy or decision that violates the FLSA. As one court explained:

> As a matter of both sound public policy and basic common sense, the mere classification of a group of employees – even a large or nationwide group – as

exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative [plaintiffs] as "similarly situated" for [29 U.S.C.] § 216(b) purposes. If it were, in every instance where an employer is accused of misclassifying a large group of employees, the district court would then somehow be required to order collective action notification, irrespective of the quality or quantity of evidence that had been produced in the form of declarations and supporting exhibits. Such a rule would run counter to the long established law governing [29 U.S.C.] § 216(b) actions, which states that whether an employee has been properly exempted under the FLSA necessitates a fact specific inquiry.

*Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 917 (D. Ariz. 2010).

**B.     Plaintiff's motion should be denied because he and other current and former field engineers are not similarly situated.**

*1.     Determining whether an employee is exempt requires individualized analysis.*

The FLSA generally requires employers to pay their employees overtime wages, at the rate of time and one-half, for hours in excess of 40 hours worked in a week. 29 U.S.C. § 207. But any employee employed in a bona fide administrative or professional capacity is exempt from the FLSA's overtime requirements. 29 U.S.C. § 213(a). And employees who receive at least $100,000.00 in annual compensation are generally exempt from overtime. 29 C.F.R § 541.601(a). The administrative, professional, and "highly compensated employee" exemptions may apply to any individual field engineer.

The administrative exemption requires (1) a salary of $455 or more per week, (2) the primary duty of office or non-manual work directly related to the management or general business operations of the employer, and (3) the exercise of discretion on matters of significance. 29 C.F.R. § 541.200. The primary duty analysis depends upon "*all the facts in a particular case*, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a) (emphasis added). Determining whether a particular employee's primary duty involves the exercise of independent judgment "must be applied in the light of all the facts involved in the particular employment situation in which the question arises." 29 C.F.R. §

541.202(b). The regulations also specifically provide that an employee who leads a team of other employees assigned to complete major projects for the employer generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the employees on the team. 29 U.S.C. § 541.203(c).

The professional exemption requires (1) work requiring advanced knowledge, (2) the advanced knowledge must be in a field of science or learning, and (3) that knowledge must be customarily acquired by a course of specialized intellectual instruction. 29 C.F.R. § 541.301(a). The regulations provide that the exemption may apply "to employees . . . who attained the advanced knowledge through a combination of work experience and intellectual instruction." 29 C.F.R. § 541.301(d). Many courts have recognized that the professional exemption requires advanced knowledge, but not necessarily in a particular degree. *See, e.g. Stevins v. Provident Constr. Co.*, 137 F. App'x 198, 200 (11th Cir. 2005) (construction superintendent was exempt professional even though "his position did not require a specific and mandatory educational prerequisite"); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737, 742 (6th Cir. 2000) (holding that funeral director and embalmer was exempt professional even though he did not hold a bachelor's degree).

An employee with total annual compensation of at least $100,000 is exempt from the FLSA's overtime requirements if he customarily and regularly performs any duty of the executive, administrative, or professional exemptions. 29 C.F.R § 541.601(a). The total compensation may include bonuses. 29 C.F.R. § 541.601(b)(1). An employee who does not work a full year may satisfy the exemption if he received a pro rata portion of the $100,000 minimum annual compensation based on the number of weeks employed. 29 C.F.R. § 541.601(b)(3).

**DEFENDANT'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S REVISED MOTION FOR CONDITIONAL CERTIFICATION**        **Page 8**

The individualized inquiry that is necessary to evaluate the administrative, professional, and "highly compensated employee" exemptions weighs against collective-action treatment. Here, key fact issues include the degree to which each field engineer exercised independent judgment, the complexity of the projects the field engineer managed, each field engineer's educational and work experience, the amount of time devoted to particular tasks, whether the field engineer worked more than 40 hours in a week, and the total annual compensation received by the field engineer.

### 2. *Misclassification cases are inappropriate for collective treatment.*

Courts have refused to conditionally certify misclassification cases based on job duties actually performed because they require highly individualized analyses that are neither efficient nor manageable. For example, in *Diaz v. Elec. Boutique of Am., Inc.*, the plaintiffs alleged the defendant misclassified employees and sought conditional certification of all current and former employees who did not receive overtime pay. 2005 WL 2654270, at *2 (W.D.N.Y. 2005). The court denied conditional certification because collective action treatment would have required an analysis of each plaintiff's duties. Although a group of employees may "share the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detailed analysis of each [employee's] duties is required, making class treatment inappropriate." *Id*.

Numerous courts have refused conditional certification in the context of misclassification claims. *Wood v. Trivita, Inc.*, 2009 WL 2046048, *4 (D. Ariz. Jan. 22, 2009) ("Plaintiff's motion and the accompanying declarations do not show that Defendants' employees have job duties similar to Plaintiff's, nor do they show that the same evidence would be used to resolve Plaintiff's claim and the claims of other employees."); *Forney v. TTX Co.*, 2006 WL 1030194 (N.D. Ill. April 17, 2006) (denying conditional certification where meeting elements of professional exemption required individualized inquiry); *Aguirre*, 2006 WL 964554, at *7

(evaluating each claim "would require a fact-specific and individualized inquiry into each employee's daily job duties"); *O'Donnell v. Robert Half Int'l, Inc.*, 429 F. Supp. 2d 246, 250 (D. Mass. 2006) ("Under the FLSA, the question of whether an employee is properly exempted involves a fact-intensive inquiry into his/her job responsibilities …."); and *Mike v. Safeco Insur. Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003) (denying conditional certification because "[d]etermining whether an employee is exempt is extremely individual and fact-intensive").

The resources of the Court and the parties are at risk of being wasted where collective treatment is granted without consideration of the "highly fact-intensive and nuanced inquiry into the particular circumstances of the employee's job." *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567 (E.D. La. 2008). In *Big Lots*, the plaintiffs were assistant store managers who alleged that they were misclassified as exempt. The court granted conditional certification of a nationwide class, and approximately 1,200 plaintiffs filed opt-in consents. After more than three years of litigation, the court decertified the class. The *Big Lots* court admitted that the initial certification of the class was an exercise in over-generalization and therefore any outcome at trial would be unjust.

> At a high level of generality opt-in plaintiffs' job duties may be similar in that they are subject to a uniform job description, are required to run individual stores according to corporate policies, and are supervised by store managers. But in terms of individual job duties, the evidence shows that the opt-in plaintiffs have different responsibilities from one another and that individuals themselves will have different duties from day-to-day and within a single day. Such diversity in individual employment situations inhibits Big Lots from proving its statutory exemption defense as to all 936 opt-in plaintiffs on the basis of representative proof. And, because the plaintiffs are dissimilar, the Court cannot confidently adjudicate plaintiffs' claims or Big Lots' defense on the merits.

*Id.* at 578-9.

To establish the propriety of conditional certification, Plaintiff must do more than merely argue that all field engineers were misclassified as exempt. He must point to a

common unlawful policy or practice that equally affected all the field engineers. As in *Diaz* and the other cases cited above, the central question in assessing Plaintiff's claim is whether the job duties he performed qualified him for a FLSA overtime exemption. This question does not lend itself to collective treatment. Because Plaintiff's allegations hinge on whether his job responsibilities satisfy the administrative, professional, or "highly compensated employee" exemption, the merits of his claims will turn upon evidence relating to his day-to-day tasks, and not upon any company policy or decision. In other words, each purported class member would require an individualized assessment.

> 3. *Plaintiff has no evidence regarding other field engineers.*

Plaintiff's Motion is supported with only one declaration. Significantly, Plaintiff fails to offer *any* evidence with respect to job requirements and pay provisions that would support a determination that other putative collective action members are similarly situated to Plaintiff. Indeed, Plaintiff's declaration fails to contain a single reference to the job duties of any other field engineer. He merely submits a declaration describing his own unique experience. Plaintiff has offered no evidence regarding the duties and responsibilities actually performed by other field engineers.

Plaintiff also fails to offer any evidence regarding the hours worked by any other field engineer. Plaintiff has not identified a single field engineer other than himself who allegedly worked more than 40 hours in a week. Furthermore, he does not even mention that many field engineers receive more than $100,000 in annual compensation.

Courts have found such thin proof insufficient to satisfy the burden of demonstrating the "similarly situated" standard. In *Bernard v. Household Int'l, Inc.*, the court held that affidavit statements from plaintiffs such as "[f]rom my experience ...working closely [with other similar positions] throughout the county" were insufficient evidence to warrant ordering notice. 231 F.

Supp. 2d 433, 436 (E.D. Va. 2002). The court denied notice because there were no affidavits from employees outside the immediate area, no specific allegations regarding practices in other offices, no names of employees or supervisors, and no indication of first-hand knowledge of problems outside two offices that were located in the same geographic area. *Id.* Similarly, in *Simmons*, the court denied conditional certification, in part, because the plaintiff offered no admissible proof that other employees "commonly work[ed] unpaid overtime." 2007 WL 210008, at *7.

**C.  Plaintiff's motion should be denied because he has not met his burden of showing other employees desire to opt in.**

Numerous courts require plaintiffs to show that other similarly-situated individuals want to opt in to an FLSA suit before granting conditional certification. *See, e.g., Dybach v. State of Fla. Dept. of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991); *H & R Block, Ltd. V. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (Cobb, J.); *Simmons*, 2007 WL 210008 at *9. In *Songer v Dillon Resources, Inc.*, the court denied conditional certification to a group of 24 plaintiffs, who claimed they were not paid overtime. 569 F. Supp. 2d 703, 707-708 (N.D. Tex. 2008). The plaintiffs submitted three affidavits stating that approximately 40 to 50 current or former employees had job duties similar to the plaintiffs and had also not been paid overtime pay. *Id.* at 707. The affidavits identified only three additional potential plaintiffs, only one of whom opted in to the action. *Id.* In denying conditional certification, the Court observed:

> Before conditionally certifying a class and authorizing notice to potential plaintiffs, the court must also satisfy itself that there are other similarly situated employees of defendants who desire to opt-in to the litigation. … Plaintiffs presented no evidence to show that either of the other named prospective plaintiffs, or any of the other forty to fifty employees at the Waxahachie terminal, would actually opt in given the opportunity.

*Id.*

Here, Plaintiff has produced even less evidence to support conditional certification than the *Songer* plaintiffs. Plaintiff filed this lawsuit over three months ago. To date, not a single other individual has opted-in to the lawsuit. And Plaintiff does not support his motion for conditional certification with affidavits of other individuals interested in joining the lawsuit. Nor does Plaintiff even claim in his own affidavit that he is aware of any particular person who is likely to participate as a plaintiff in this case. Plaintiff's reliance on his own allegations that the putative class members exist and together were the victims of a single decision, policy, or plan that violated the FLSA is insufficient to meet his burden for conditional certification. *See Simmons*, 2007 WL 210008 at *9.

**D.    Plaintiff's proposed notice is improper.**

Trican contends conditional certification of this action is not appropriate. If, however, the Court grants conditional certification, Trican objects to Plaintiff's proposed notice.

*1.    The notice erroneously implies judicial sponsorship.*

Trican objects to Plaintiff's proposed notice because it erroneously suggests judicial sponsorship. The Supreme Court has cautioned that judicial neutrality in the court-authorized notice process is vital. In fact, "trial courts must take care to avoid *even the appearance of judicial endorsement* of the merits of the action." *Sperling*, 493 U.S. at 174 (emphasis added). To this end, courts have rejected the inclusion of a court caption on the notice because it could be perceived as a judicial endorsement. *See, e.g., Gee v. Suntrust Mortgage Inc.,* 2011 WL 722111, *4 (N.D. Cal. Feb. 18, 2011); *Colozzi v. St. Joseph's Hospital Health Center,* 2009 WL 2045315, *5 (N.D. N.Y. May 27, 2009).

*2.    The 90-day notice period is too long.*

Trican objects to the 90-day notice period. Forty-five days is more than sufficient time for a notice period in this case. *See Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 501 (D.

Neb. 2009) ("Forty-five days is sufficient time for putative plaintiffs to consider their options"); *DeKeyser v. ThyssenKrupp Waupaca, Inc.*, 2008 WL 5263750, at *6 (E.D. Wis. Dec. 18, 2008) (45 days).

   3. *The relevant time period reaches back no more than 3 years.*

Plaintiff's proposed notice seeks to send notice to employees working for Trican as much as three years preceding the original filing of the lawsuit. However, the statute of limitations continues to run until the filing of an opt-in consent. *See* 29 U.S.C. § 256. Thus, the proper time period is the three-year period prior to the issuing of notice. Any longer time period will result in individuals receiving notice whose statute of limitations has expired.

   4. *Trican should not be required to post the notice.*

Plaintiff requests that Trican be ordered to post notice of the lawsuit "at the district offices." Courts have routinely found that first class mail is the best manner for distributing notice in putative collective actions. "Historically, first class mailing has been utilized because it provides a controlled method by which individual notification can be provided through a reliable process which ensures that proper notice is received by the potential class members." *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 91 (E.D.N.Y. 2007); s*ee also Hintergerger v. Catholic Health System*, 2009 WL 3464134, *13 (W.D. N.Y. Oct. 21, 2009). In *Martinez v. Cargill Meat Solutions*, the court denied plaintiffs' request for workplace posting stating "[t]here is not evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs." 265 F.R.D. 490, 500-501 (D. Neb. 2009).

**E.**  **Trican should not be required to produce contact information to Plaintiff.**

In the event the Court conditionally certifies this case as a collective action, Trican should not be required to produce current or former employees' names, last known home and work addresses, dates of birth, Social Security numbers, and email addresses, or any other personal

information, to Plaintiff's counsel due to the "privacy concerns implicit in information derived from personnel records." *Torres v. CSK Auto, Inc.*, No. EP-03-CA-113(KC), 2003 WL 24330020, at *3 (W.D. Tex. Dec. 17, 2003) (denying FLSA plaintiffs' request for names, addresses, Social Security numbers and telephone numbers of putative class members; *see also Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-cv-0776-D, 2004 WL 2293842, at *5 (N.D. Tex. Oct. 7, 2004*); Humphries v. Stream Int'l, Inc.*, No. 3:03-cv-01682, 2004 U.S. Dist. LEXIS 220465, at *12 (N.D. Tex. Feb. 13, 2004).

Trican requests the parties use a third-party administrator to issue notice. Utilizing a third-party administrator will ensure the required neutrality of the notice process is secured and the privacy of those receiving notice is protected from encroachment. *See Lockhart v. County of Los Angeles*, 2008 WL 2757080 *5 (C.D. Cal. Jul. 14, 2008) (protecting private information by appointing a third party administrator to give notice); *Gerlach*, 2006 WL 824652 *4 (indicating consent "forms should be returned to a third-party administrator."); *Torres*, 2003 WL 24330020, at *3. As noted by the court in *In re American Family Mut. Ins. Co. Overtime Pay Litigation*, "use of a third-party administrator is appropriate to protect the integrity of the process and to protect the confidential information of potential opt-in plaintiffs." 2009 WL 248677, at *4 (D. Colo. Feb. 3, 2009). Protecting current and former employees' personal information is a legitimate concern necessitating the use of a third-party administrator.

## V. CONCLUSION

For these reasons, Trican asks the Court to deny Plaintiff's Motion for Conditional Certification, for Disclosure of Contact Information, and to Send Notice.

Respectfully submitted,

/s/ John B. Brown
John B. Brown
Texas Bar No. 00793412
john.brown@ogletreedeakins.com
Angela Clanton Green
Texas Bar No. 24040695
angela.Green@ogletreedeakins.com
Ryan M. Miller
Texas Bar No. 24070281
ryan.miller@ogletreedeakins.com

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Preston Commons, Suite 500
8117 Preston Road
Dallas, Texas 75225
Telephone: 214-987-3800
Facsimile: 214-987-3926

**ATTORNEYS FOR DEFENDANT**

# CERTIFICATE OF SERVICE

I certify that on May 2, 2013, I electronically submitted the foregoing document with the Clerk of the Court for the U.S. District Court, Eastern District of Texas, Tyler Division, using electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to the following CM/ECF participants:

Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 S. Shackleford Road, Suite 110
Little Rock, Arkansas 72211

/s/ John B. Brown
John B. Brown

14930808.2