IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

**JOSEPH GAUTHIER, Individually and**                                  **PLAINTIFF**
**On Behalf of All Others Similarly Situated**

vs.                              No. 6:13-cv-46

**TRICAN WELL SERVICE, L.P.**                                       **DEFENDANT**

## REPLY IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION, et al. RELIEF

Defendants raise several spurious arguments in their Response in Opposition to Plaintiff's Motion for Conditional Certification of Collective Action. They are standard defense fare, and are more often than not rejected by district courts throughout the nation. As such, this Court should grant Plaintiff's Motion for Conditional Certification under 29 U.S.C. § 216(b).

    I.    Plaintiff has demonstrated that he is similarly situated to others by documentary evidence and his presence at several of Defendant's locations, and the Court should certify the proposed class as set forth in Plaintiff's Motion.

Plaintiff's burden at this stage is lenient and easily met. The exhibits attached to Plaintiff's Motion are credible evidence of the existence of similarly situated individuals. Trican has four (4) operational districts in Texas, and approximately nine (9) total operational districts in Texas, Arkansas, Oklahoma, Pennsylvania and North Dakota. Plaintiff worked primarily out of the Longview District, but also worked at the Shawnee, Oklahoma District and the Serace District in Arkansas. ECF No. 13-2 at ¶ 11. Plaintiff declared that he had no retraining or orientation at each new site, but rather was immediately on the job and working as the duties and responsibilities of a Field Engineer were identical throughout the company. ECF No. 13-2 at ¶ 12. Furthermore, Trican's own job postings for such locales as Minot, North Dakota and Odessa, Texas—while 1,317 miles apart—are substantially identical and represent the same job duties, corporate policies, and prerequisites for employment. Defendant offered nothing to rebut this com-

pelling evidence but for three declarations from middle management company men who never worked as a Field Engineer for Trican. See, e.g., ECF No. 11-3 at ¶ 2 ("My duties are mainly managerial and not technical. I generally [] only go to job sites twice per month."). In contrast, Plaintiff was on the job site seven days a week, precisely because his duties were "technical" and physical rather than managerial. ECF No. 13-2 at ¶ 14-15 & 22. Moreover, Defendant's statements focus on the merits of the lawsuit—but the merits are not relevant at the notice stage. In re Pilgrim's Pride, 2008 US Dist LEXIS 93966 at *3. The Court also refrains from making credibility determinations or resolving contradictory evidence. Id. Even if merits were relevant at this stage and Defendant had found a single Field Engineer who supported Defendant's version of the story, courts regularly discredit that kind of evidence as well as the "evidence" Defendant presented as insubstantial "happy camper" testimony.

For instance, in Creely v. HCR ManorCare, Inc., the Northern District of Ohio noted that it was not "swayed" by the defendants' "happy camper" affidavits, which it deemed "of little use at this juncture." 789 F. Supp. 2d 819, 840 (N.D. Ohio 2011). The court stated that the defendant's "argument that such affidavits show [that the] proposed class is unmanageable and overbroad" failed because "the Court's function at this stage of conditional certification is not to perform a detailed review of individualized facts from employees hand-picked by [the defendant]." Id. Indeed, the court noted that "**questions of breadth and manageability of the class are left until the second-stage analysis following the receipt of forms from all opt-in plaintiffs**." Id. See also West v. Lowes Home Ctrs., Inc., 2010 U.S. Dist. LEXIS 139737, 2010 WL 5582941, at *8 (W.D. La. Dec. 16, 2010) (giving little to no weight to the declarations of handpicked employees of defendant whose testimony had not been subject to cross examination by plaintiffs).

Defendant's declaration that "[d]etermining whether an employee is exempt requires analysis of individualized facts" is a red herring. Pursuant to Lusardi, it is one again a merits-

based analysis which is **not** undergone by a court at this stage. Defendant itself admits that the "the first stage of the Lusardi test is modest […]." ECF No. 11 at p.14. The second stage under Lusardi—not the first—is the appropriate time for the exemptions analysis that Defendant interjects. Regardless, for the sake of argument and thoroughness, other oil field companies have argued the same exemptions as Defendant does here for the Field Engineer position, and have failed. See David Smith, et al. v. Frac Tech Services, LLC, 4:09-cv-00679-JLH (E.D. Ark. Jan. 11, 2011) (granting Field Engineers' motion for summary judgment as to **all** FLSA exemptions).

The same court in the Eastern District of Arkansas also disagreed with Defendant's belief that misclassification cases are somehow inappropriate for collective action status. Smith, 2009 WL 4251017, at *7-8 (E.D. Ark. Nov. 24, 2009) (certification granted for misclassified service supervisors); Smith, 2010 WL 743296, at *4 (E.D. Ark. Feb. 26, 2010) (certification granted for misclassified field engineers). This is a common result. A review of the cases cited by Defendant where certification was denied demonstrates that the facts of this case warrant certification. Generally, the misclassification cases cited by Defendant involved proposed classes that were much broader than the proposed class here, often including all salaried employees regardless of title or basic job duties. See e.g., Wood v. TriVita, Inc., 2009 U.S. Dist. LEXIS 64585 (D. Ariz. Jan. 22, 2009) (denying class certification for a massive group of salaried employees who worked as "call center employees, office clerical, administrative, and executive assistants, accounting and payroll employees, and health and wellness coaches and consultants."). In contrast, Plaintiff here only seeks certification of a class of Field Engineers. As for the 29 C.F.R § 541.601(a) exemption argued by Defendant, the Court could easily modify the class definition to reflect that only those making less than $100,000.00 annually may opt in to the certified class.

    II.    The law does not require Plaintiff to irrefutably demonstrate that other plaintiffs desire to opt-in prior to the issuance of notice.

As stated in Plaintiff's Motion, the recent trend among district courts in Texas rejects the third, non-statutory element proposed by Defendant here. "[R]equiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect is purposes." Luvianos, 2012 U.S. Dist. LEXIS 183027, *15-16. "[I]t is enough for Plaintiff[] to present evidence that there **may be** other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit." Id. The Court should decline to consider the third, non-statutory element, and instead focus on the elements universally accepted by district courts in this Circuit.

III. Plaintiff's proposed notice is abundantly reasonable, neutral, and fair and should be approved by this Court and posted at Defendant's worksites immediately and throughout the Notice period.

The inclusion of the style of the case on the first page of Plaintiff's Proposed Class Notice no more creates the imprimatur of the Court than the inclusion of the same on any of Plaintiff or Defendant's pleadings. Furthermore, an approved and authorized notice does in fact have the imprimatur of the issuing court—it is by definition a court-approved document that the court itself has given authority for counsel to distribute to putative class members.

Ninety days is the only appropriate opt-in period for a case such as this. The industry in which Defendants are involved takes class members away from their homes and out to remote rigging sites for anywhere from a month to a half year at a time, seven days a week, with little if any contact with their home. It is for this same reason that workplace posting is appropriate in this case, though it may not be in others. Moreover, the Federal Judicial Center recognized the need for the opt-in period requested by Plaintiff in the FJC's publication, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 2010: "[c]lass members need

time to receive a notice by mail […]. A minimum of 30 days is necessary **from completed dissemination** […], **with 60–90 days preferred**. This allows for re-mailings, fulfillment of request for more information, and consideration of rights and options."

Finally, Plaintiff's need for the contact information of putative plaintiffs outweighs any privacy interest that Defendant might assert on behalf of a third party. When a court approves notice to the putative class, discovery of the names and addresses of putative class members has consistently been granted. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. at 170; U.S. v. Cook, 795 F.2d 987 (Fed. Cir. 1986); Summa v. Hofstra Univ., 2008 WL 3852160 (E.D.N.Y. Aug. 14, 2008); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d at 240.

                                                  Respectfully submitted,

**JOSEPH GAUTHIER, Individually and
On Behalf of All Others Similarly Situated,
PLAINTIFF**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 SOUTH SHACKLEFORD, STE 110
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

By:   /s/ Josh Sanford
       Josh Sanford
       Texas Bar No. 24077858
       josh@sanfordlawfirm.com

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing pleading was electronically filed with the clerk for the U.S. District Court, Eastern District of Texas, on May 9, 2013, using CM/ECF:

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225

                                                  /s/ Josh Sanford
                                                    **Josh Sanford**